No. 47.—Henry Hately, plaintiff in error, *vs.* The State of Georgia.

[1.] A principal is one who is the perpetrator of the crime; or who is present, actually or constructively, aiding and abetting in the same.

[2.] He who procures, counsels, commands or incites his clerk or agent to commit a crime, in his absence, is guilty as an accessory *before* the fact, and cannot be convicted upon an indictment which charges him with having jointly, with his clerk, committed the offence, as principal.

[3.] Every person, agent or principal, is responsible for his criminal conduct, and cannot plead the authority or commands of a superior, as a justification, unless the act be committed under coercion.

Hately *vs.* The State.

Misdemeanor, in Cass Superior Court. Decisions by Judge JOHN H. LUMPKIN, March Term, 1854.

Henry Hately and Clement Turner were indicted jointly, and as principals, for furnishing spirituous liquor to a slave. Hately, alone, was arrested and placed upon his trial. The proof was, that Turner was the Clerk of Hately, and that Turner furnished the liquor to a slave, in the absence of Hately. The Court charged the Jury that upon this evidence, Hately might be convicted.

This charge is assigned as error.

MILNER, for plaintiff in error.

Sol. Gen'l WORD, for The State.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The plaintiff in error and Clement Turner were indicted jointly, as *principals*, and charged with furnishing spirituous liquor to a slave, without lawful authority.

A *principal* is one who is the actual perpetrator of the crime; or who is present, aiding and abetting in the same. (1 *Hale,* 233, 615. 1 *Ch. Cr. L.* 256.)

The record shows, that Clement Turner was the actual perpetrator of the offence charged in this case, and that the plaintiff in error was not present, actually or constructively. Therefore, he could not have been a principal, in the commission of this misdemeanor; and the Court erred in charging that he might be convicted on this indictment.

[2.] If the plaintiff in error, being absent, procured, counselled, commanded or incited his clerk to commit this act, or abetted him in doing so, he was guilty as an accessory, *before* the fact, and should have been indicted as such, if there was evidence to sustain the charge. The bare fact, however, that Turner was his clerk, was not sufficient evidence that he was accessory to the offence. To make it such, would be to authorize the presumption that his agent was employed for an un-

lawful purpose; whereas, the law presumes, in the absence of proof to the contrary, that every man employs his servants and agents for lawful purposes only.

The Solicitor General suggests, that unless a person, circumstanced as was this plaintiff in error, be held liable to a prosecution, for the unlawful acts of his clerk, it will be difficult to bring persons to justice, who are in the habit of pursuing this unlawful traffic with slaves, because, (as he insists,) if the clerk be indicted, he will plead the authority and commands of his employer; and that the store or shop belongs to the latter.

[3.] Such plea could avail a clerk nothing, under such circumstances. Every person—agent, as well as principal, is responsible for his or her criminal conduct, and cannot plead the authority or commands of another, as a justification, except where he or she acts under coercion. *Rei turpis null um mandatum est.*

Even in *torts*, an agent is liable, in damages, to third persons, for acts of positive *malfeasance*, (not, in general, for *nonfeasance*,) and it is laid down that "no authority, whatsoever, from a superior, can furnish to any party, a just defence for his own positive torts or trespasses." (*Story on Ag.* §309.)

It was also said, that unless a principal be held liable for the acts of his clerk, in a case like that at bar, the cause of temperance and good order among our slaves, loses the benefit of one of those guarantees against this traffic, which the Legislature has provided in the oath which every retailer is required to take, when procuring his license, to the effect that he will not sell or furnish spirituous liquors to slaves. It should be remembered, that in taking that oath, the retailer is required also to swear, that he will not suffer or allow any other person so to sell or furnish spirituous liquors, with his knowledge or consent.

I would also suggest, that this Court has decided, in a case which was before us at our last session in Milledgeville, that it is lawful for the corporate authorities of any town or village in our State, having authority, by law, to grant such license, to

require every clerk, or agent of persons licensed by them, to take a similar oath.

' Judgment reversed.